1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DAVID S. CHANEY
   Chief Assistant Attorney General
3  FRANCES T. GRUNDER
   Senior Assistant Attorney General
4  MICHAEL W. JORGENSON
   Supervising Deputy Attorney General
5  EMILY L. BRINKMAN, State Bar No. 219400
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5742
    Fax:  (415) 703-5843
8   Email:  Emily.Brinkman@doj.ca.gov
   Attorneys for U. J. Cooper and Robert A. Horel

9

10

IN THE UNITED STATES DISTRICT COURT

11

FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

SAN FRANCISCO DIVISION

13

14  **ERNEST S. HARRIS,**                          C 06-7761 MJJ (PR)

15                                   Plaintiff,

16        **v.**

17  **ROBERT A. HOREL, et al.,**

18                                   Defendants.

19

20  **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS;**

21  **MEMORANDUM OF POINTS AND AUTHORITIES**

22

23

24

25

26

27

28

# TABLE OF CONTENTS

| | Page |
|---|---|
| MEMORANDUM OF POINTS AND AUTHORITIES | 2 |
| INTRODUCTION | 2 |
| STATEMENT OF THE CASE | 2 |
| ISSUE STATEMENT | 3 |
| STATEMENT OF FACTS | 3 |
|     A.   Facts regarding the Pelican Bay IEPP. | 3 |
|     B.   Facts regarding the disciplinary process. | 7 |
|     C.   Facts regarding the inmate appeals process. | 9 |
| SUMMARY OF THE ARGUMENT | 11 |
|     A.   The Exhaustion Requirement under the Prison Litigation Reform Act is mandatory. | 11 |
|     B.   Plaintiff Failed to Properly Exhaust his Claims in This Action. | 13 |
|         1.   Plaintiff failed to exhaust his administrative remedies in relation to his claim of retaliation for filing inmate grievances. | 14 |
|         2.   Plaintiff failed to exhaust his administrative remedies in relation to his claim of an Eighth Amendment violation based upon the IEPP. | 14 |
| CONCLUSION | 17 |

# TABLE OF AUTHORITIES

Page

**Cases**

Booth v. Churner
532 U.S. 731 (2001)                                                12

Freitag v. California Department of Corrections
468 F.3d 528 (9th Cir. 2006)                                      3, 4

Madrid v. Gomez
889 F. Supp. 1146 (N.D. Cal. 1995)                               4, 16

McKinney v. Carey
311 F.3d 1198 (9th Cir. 2002)                                      12

Porter v. Nussle
534 U.S. 516 (2002)                                                12

Vaden v. Summerhill
449 F.3d 1047 (9th Cir. 2006)                                      12

Woodford v. Ngo
126 S. Ct. 2378 (2006)                                          12, 16

Wyatt v. Terhune
315 F.3d 1108 (9th Cir. 2003)                                    1, 11


**Constitutional Provisions**

Eighth Amendment                                                14-17

Fourteenth Amendment                                               15


**Statutes**

California Code of Regulations, Title 15
    § 3000                                                          4
    § 3007                                                       4, 15
    § 3084.1(a)                                                    12
    § 3084.2(a)(1)                                                 16
    § 3084.4                                                       11
    § 3084.5                                                       12
    § 3177                                                          4
    § 3323                                                          4
    § 3341.5                                                        4

Penal Code
    § 314                                                           6
    § 5058.1                                                        4

**TABLE OF AUTHORITIES (continued)**

| | Page |
|---|---|
| Prison Litigation Reform Act (PLRA) | 1, 2, 11, 12, 17 |
| | |
| United States Code, Title 42 | |
| § 1983 | 1, 2, 11, 12 |
| § 1997e(1) | 2 |
| § 1997e(a) | 1, 2, 11, 12 |

**Court Rules**

| | |
|---|---|
| Federal Rules of Civil Procedure | |
| Rule 12(b) | 1, 11, 17 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Not. of Mot. & Mot. to Dismiss

*Harris v. Horel, et al.*
C 06-7761 MJJ (PR)

EDMUND G. BROWN JR.
Attorney General of the State of California
DAVID S. CHANEY
Chief Assistant Attorney General
FRANCES T. GRUNDER
Senior Assistant Attorney General
MICHAEL W. JORGENSON
Supervising Deputy Attorney General
EMILY L. BRINKMAN, State Bar No. 219400
Deputy Attorney General
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5742
  Fax: (415) 703-5843
  Email: Emily.Brinkman@doj.ca.gov
Attorneys for   U. J. Cooper and Robert A. Horel

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **ERNEST S. HARRIS,** <br><br>                      Plaintiff, <br><br>     v. <br><br> **ROBERT A. HOREL, et al.,** <br><br>                    Defendants. | C 06-7761 MJJ (PR) <br><br> **DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |

TO PLAINTIFF EARNEST HARRIS, IN PRO SE:

PLEASE TAKE NOTICE that Defendants Horel and Cooper (Defendants) move this Court to dismiss this 42 U.S.C. § 1983 action for failure to exhaust administrative remedies under the non-enumerated portion of Rule 12(b) of the Federal Rules of Civil Procedure, as mandated by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).

PLEASE TAKE FURTHER NOTICE that the Court may look beyond the pleadings and decide disputed issued of fact with ruling on Defendants' non-enumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119-20 (9th Cir. 2003). Plaintiff may provide evidence to the Court to dispute that which is presented by Defendants. *Id.* at n. 14.

1    This motion is based on this notice of motion and motion, the accompanying memorandum

2  of points and authorities, supporting declarations, all pleadings, exhibits, and papers on file in

3  this action, Defendants request for judicial notice, and any other matters properly before the

4  Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

7    Plaintiff Earnest S. Harris (Plaintiff) alleges that his right to be free from cruel and unusual

8  punishment under the Eighth Amendment have been violated by Defendant Horel's imposition of

9  the Indecent Exposure Pilot Program (IEPP) at Pelican Bay State Prison (Pelican Bay). Plaintiff also

10  claims that Defendant Cooper has retaliated against him for filing inmate grievances when she issued

11  disciplinary reports against him for indecent exposure.

12    Plaintiff failed to exhaust his administrative remedies relating to his claims of retaliation and

13  Eighth Amendment violations as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C.

14  § 1997e(a). Therefore this Court must dismiss this cause of action.

## STATEMENT OF THE CASE

16    On December 19, 2006, Plaintiff, a California state prisoner, filed his Complaint pro se under

17  42 U.S.C. § 1983 against two prison officials at PBSP in Crescent City, California. (Court Docket

18  No. 1.)

19    As required by 42 U.S.C. § 1997e(1), the Court screened the Complaint and ordered service on

20  Defendants Horel and Cooper. (Order of Service of May 15, 2007.) The Court determined that

21  Plaintiff's Complaint stated two cognizable claims: "(1) the policies created and implemented by

22  defendant Warden Robert Horel in response to incidents of indecent exposure by inmates violate

23  petitioner's Eighth Amendment rights; and 2) defendant correctional officer U.J. Cooper retaliated

24  against plaintiff for his filing of administrative grievances, in violation of plaintiff's First

25  Amendment rights." (*Id.* at 1:28, 2:1-4.) The Court ordered service upon Defendants Horel and

26  Cooper.

27  \\\

28  \\\

Not. of Mot. & Mot. to Dismiss                                    *Harris v. Horel, et al.*
                                                                 C 06-7761 MJJ (PR)

1

**ISSUE STATEMENT**

2    The PLRA requires inmates to exhaust their available administrative remedies before filing

3    civil rights action.

4    Should this Court dismiss this action because Plaintiff failed to properly exhaust

5    administrative remedies for any and all of his claims in this actions?

6

**STATEMENT OF FACTS**

7    1.    Plaintiff brought this action against two employees of the California Department of

8    Corrections and Rehabilitation (CDCR).  From April 2006 though the present date, Defendant

9    Horel has been employed as the Warden of Pelican Bay.  (Decl. Barlow ¶ 17).  Defendant Cooper

10    is employed as employed as a Correctional Officer assigned as Relief Watch in Facilities C and

11    D.  (*Id*.)  Relief Watch covers the shifts of correctional officers assigned to their regular days off.

12    (*Id*.)

13    2.    Plaintiff is an African-American inmate and since August of 1995, he has been housed

14    in the Security Housing Unit (SHU), Facility C, at Pelican Bay.  (Decl. Barlow ¶ 18.)

15    3.    Facilities C and D at Pelican Bay contain the SHU and house level IV inmates.  (Decl.

16    Barlow ¶ 19.)  The inmates housed in the SHU are the highest level of security and risk.  (*Id*.)

17    Inmates who have a history of violence and/or are validated gang members or associates

18    comprise the majority of inmates in the SHU.  (*Id*.)

19    **A.    Facts regarding the Pelican Bay IEPP.**

20    4.    At Pelican Bay, the Madrid Compliance Unit (MCU) is responsible for monitoring and

21    auditing several class action lawsuits and the Correction Action Plans (CAPs) and/or remedial

22    plans that govern them.  (Decl. Patten ¶ 3.)  This includes creating and implementing the CAPs

23    under *Freitag v. California Department of Corrections*, 468 F.3d 528 (9th Cir. 2006), N.D. Cal.

24    Case No. C00-2278 TEH.  (*Id*.)  *Freitag* specifically involves the management of habitual

25    indecent exposure by inmates.  (*Id*.)

26    5.    Following the issuance of an injunction in *Freitag*, on April 21, 2003, Pelican Bay

27    began writing the CAP to address the management of indecent exposure incidents at Pelican Bay.

28    (Decl. Patten ¶ 4, Ex. A.)  The Captain of the MCU then drafted the Lesson Plan, Operational

Not. of Mot. & Mot. to Dismiss

*Harris v. Horel, et al.*
C 06-7761 MJJ (PR)

3

1  Procedure (OP) number 233, and the Pilot Program used to implement the CAP. (*Id.*, Exs. B, C,

2  D.) The MCU then established a training team and trained all Pelican Bay staff on the new CAP.

3  (*Id.*)

4       6.    The injunction and monitoring for indecent exposure of inmates was assigned to the

5  Special Master in *Madrid v. Gomez*, 889 F. Supp. 1146 (N.D. Cal. 1995), Case No. C90-3094

6  TEH. (Decl. Patten ¶ 5.) All indecent exposure plans were submitted to the *Madrid* Special

7  Master for approval. (*Id.*) This process included meetings under the direction of the Special

8  Master, John Hagar, and involved the Prison Law Office, the Attorney General's Office, the

9  attorneys from *Freitag*, CDCR Legal, Pelican Bay's Warden, and members of clinical and

10 custodial staff. (*Id.*)

11      7.    Following the issuance of the permanent injunction, CDCR began implementing

12 policies and procedure at Pelican Bay to remedy incident of indecent exposure. (Decl. Patten ¶

13 6.) The CAP was implemented starting approximately July 15, 2003. (*Id.*) The Pilot Program

14 began March 1, 2005 and CDCR provided notice to the inmates on October 5, 2004. (*Id.*, Ex. F.)

15 Per Penal Code section 5058.1, the Pilot Program was in place from March 1, 2005 through

16 March 1, 2007. (*Id.*)

17      8.    The Pilot Program continues to be followed at Pelican Bay following changes to the

18 Department Operational Manual, Chapter 5, Article 25, Section 52100.1 through 52100.7. (Decl.

19 Patten ¶ 7.) Departmental Regulations, California Code of Regulations title 15, sections 3000,

20 3007, 3177, 3323, and 3341.5, have been created and implemented as a result of the Pelican Bay

21 Pilot Program for the Management of Indecent Exposure Incidents. (*Id.*) Pelican Bay continues

22 to manage incidents of inmate indecent exposure or sexual disorderly conduct consistent with the

23 injunction and the primary elements reflected in the Pilot Program. (*Id.*)

24      9.    There are five primary elements to the Pelican Bay Pilot Program for the Management

25 of Indecent Exposure Incidents;

26      a.    Training: All correctional staff are required to take a two hour training course on

27           the Management of Inmate Indecent Exposure and Sexual Disorderly Conduct. This

28           class is provided on a monthly basis at Pelican Bay Employee Orientation.

1    b.    Disciplinary Component: Sanctions include can include a term in the SHU, loss of

2    canteen, loss of property, annual or quarterly package loss, appliance restrictions, and

3    visiting restrictions.  Incident and disciplinary reporting requirements include

4    mandatory reporting for all correctional staff.  The Reporting Employee is then

5    provided with immediate support from the institution and advised of access to further

6    support and/or tools available to respond to the indecent exposure or sexual disorderly

7    conduct.  Referrals to the District Attorney and/or prosecutions are consistent with a

8    Memorandum of Understanding with the local District Attorney's Office.

9    c.    Security Precautions: These include a bright yellow placard or Lexan cell covering

10   attached to the front of the cell to alert staff of an inmate's propensity to commit acts

11   of indecent exposure or sexual disorderly conduct.  Also used is an exposure control

12   jumpsuit that prevents an inmate from exposing himself.  This suit is mandatory for

13   inmates who commit acts of indecent exposure or sexual disorderly conduct out of

14   their cell.  Any inmate who is assigned to an Exposure Control Jumpsuit is required to

15   be under direct supervision and only wears the suit when the inmate is being escorted

16   to and from his cell or is participating in out of cell activities.  The inmate is not

17   required to wear this suit while in his cell.  These precautions are consistently reviewed

18   and removed once the inmate has been in compliance with the regulations relating to

19   indecent exposure for a designated period of time.

20   d.    Mental Health Component: Inmates that offend as a result of a mental disorder

21   known as exhibitionism or paraphilia are provided the opportunity to participate in

22   treatment and voluntarily participate in group therapy.  Although exhibitionism is not

23   one of the mental illnesses identified as requiring mandatory treatment or threat to

24   self or the safety of others, treatment is offered to those diagnosed with exhibitionism

25   in order to provide another means of reducing indecent exposure incidents and to

26   create a better working and living environment for staff and inmates.

27   e.    Administrative review: All indecent exposure and sexual disorderly conduct

28   incidents are reviewed by the Indecent Exposure Review Committee monthly to ensure

Not. of Mot. & Mot. to Dismiss

*Harris v. Horel, et al.*
C 06-7761 MJJ (PR)

1  that policies and procedures are followed as well as to review correctional staff's ideas

2  and concerns. This committee also identifies any trends and measures the program's

3  impact.

4  (Decl. Patten ¶ 8.)

5      10.  The disciplinary sanctions vary depending upon the number of prior incidents. A first

6  offense might result in the loss of the following privileges for up to 90 days: a) canteen; b)

7  appliances (radios, television, cd player); c) annual/quarterly packages; d) telephone privileges;

8  and e) loss of personal property. (Decl. Patten ¶ 9.) A second offense can result in the loss of the

9  previously stated privileges for up to 180 days. (*Id.*) An inmate convicted of a violation of Penal

10  Code section 314, indecent exposure, or section 647(a), sexual disorderly conduct, could also

11  face the possibility of losing family visitations. (*Id.*) Violations of this nature can also subject an

12  inmate to placement within the SHU for a determinate period of time which is referred and

13  reviewed by the Institutional Classification Committee chaired by the Warden or his designee.

14  (*Id.*)

15      11.  In an effort to protect staff and other inmates from being exposed to incidents of

16  indecent exposure, the Pilot Program and OP 233 identified the following security precautions,

17  which can be imposed temporarily or on an extended basis with weekly review by the appropriate

18  authority:

19      a.  temporary yard restriction;

20      b.  use of behavior modification suit (Attached as Exhibit G is a true and accurate

21      representation of a behavioral modification suit);

22      c.  bright yellow placard or Lexan (depending upon the cell front type) used to alert

23      staff of inmates who have a propensity to commit acts of indecent exposure or sexual

24      disorderly conduct. The color yellow was chosen because it is a universal sign for

25      warning. (Attached as Exhibit H is a true and accurate representation of one type of

26      Lexan cell front covering); and

27      d.  substitute concrete yard for regular yard.

28  (Decl. Patten ¶ 10.) These precautions vary depending upon where the inmate is housed (General

1    Population, Administrative Segregation, or Psychiatric Services Unit for example), where the

2    offense occurs (in cell, in showers, in group therapy session for example), and whether the

3    conduct is habitual.  (*Id.*)  These precautions are done primarily to warn staff of the inmate's

4    indecent exposure behavior.  (*Id.*)

5       12.   Per policy, Plaintiff's security precautions were reviewed regularly in order to

6    determine whether they were still appropriate.  (Decl. Barlow ¶ 20, Ex. N.)  Plaintiff was first

7    placed on food delivery service and paper tray precaution on August 8, 2003.  (Decl. Barlow ¶ 7,

8    Ex. D.)  Then on April 3,  2004, the Lexan cell covering and behavior suit security precaution

9    measures were added following additional incidents of indecent exposure.  (Decl. Barlow ¶ 10,

10   Ex. G.)  From March 1, 2006 through December 18, 2006 there were monthly assessments by the

11   Facility Captain and approved by the Associate Warden reviewing those security precautions.

12   (Decl. Barlow ¶ 20, Ex. N.)  In fact, on July 6, 2006 the food delivery system and paper tray

13   precautions were removed.  (*Id.*)

14      **B.    Facts regarding the disciplinary process.**

15      13.   Between May 5, 1999 and February 24, 2006, Plaintiff received eleven disciplinary

16   reports, also known as rule violation reports.  All but three of those disciplinary reports have

17   been for indecent exposure.  The following list details the disciplinary reports:

18          a.    May 5, 1999: Log no. C99-05-0007; indecent exposure allegations brought by

19          Correctional Officer Northrup; found guilty; no credit loss.  (Decl. Barlow ¶ 3,

20          Ex. A.)

21          b.    December 27, 1999: Log no. C99-12-0013; indecent exposure allegation brought

22          by Medical Technical Assistant Broce; found guilty; given 90 day loss of credit.  (Decl.

23          Barlow ¶ 4, Ex. B.)

24          c.    February 22, 2001: Log no. C01-02-0020; Attempted murder of a peace officer

25          brought by Correctional Officer McManus; found guilty and given a 360 day loss of

26          credit; case referred to the Del Norte County District Attorney who accepted a guilty

27          plea to battery on a peace officer and Plaintiff sentenced to eleven years in prison.

28          (Decl. Barlow ¶ 6, Ex. C.)

Not. of Mot. & Mot. to Dismiss

*Harris v. Horel, et al.*
C 06-7761 MJJ (PR)

d.    August 8, 2003: Log no. C03-08-0006; disorderly conduct allegations brought by Correctional Officer Hernandez; found guilty and given 60 day loss of credit; placed on food delivery system capped cell and given paper trays. (Decl. Barlow ¶ 7, Ex. D.)

e.    October 24, 2004: Log no. C03-10-0026; indecent exposure allegations brought by Correctional Officer Delaunay; found guilty and given 90 day loss of credit, referred to the Del Norte District Attorney's Office. (Decl. Barlow ¶ 8, Ex. E.)

f.    October 24, 2004: Log no. C03-10-0027; threat of force allegations brought by Correctional Officer Delaunay; found guilty and given 150 day loss of credit. (Decl. Barlow ¶ 9, Ex. F.)

g.    April 3, 2004: Log no. C04-04-0002; indecent exposure allegation brought by Correctional Officer Harlow; found guilty; given 90 day credit loss, loss of canteen, required to wear behavioral suit and yellow Lexan covering the cell window as means of security precautions. (Decl. Barlow ¶ 10, Ex. G.)

h.    June 15, 2004: Log no. 04-06-0006; indecent exposure allegation brought by Defendant Cooper; found guilty and given 90 day loss of credit. (Decl. Barlow ¶ 11, Ex. H.)

i.    August 10, 2004: Log no. 04-08-0007; criminal threat allegation brought by Defendant Cooper; found guilty, given 150 day loss of credit; referred to the Del Norte District Attorney's Office and dismissed following plea to log no. C01-02-0020. (Decl. Barlow ¶¶ 6, 12, Exs. C, I.)

i.    February 22, 2005: Log no. 05-02-0021; indecent exposure allegation brought by Correctional Officer Morrison; found guilty, given 90 day credit loss. (Decl. Barlow ¶ 13, Ex. J.)

j.    April 30, 2 005: Log no. 05-04-0024; indecent exposure allegation brought by Correctional Officer Iorg; found guilty, given 90 day credit loss and privilege loss as a result of new pilot program. (Decl. Barlow ¶ 14, Ex. K.)

k.    January 10, 2006: Log no. 06-01-0005: advocating criminal behavior allegations brought by Correctional Officer Stewart; found guilty, given 30 day loss of credit.

1    (Decl. Barlow ¶ 15, Ex. L.)

2    l.    February 24, 2006: Log no. 06–02-0011; indecent exposure allegation brought by

3    Defendant Cooper; found guilty, no loss of credit given but privileges are taken away

4    for 180 days, including no canteen, no mail, no personal property.  Restrictions end

5    October 2, 2006.  (Decl. Barlow ¶ 16, Ex. M.)

6    **C.    Facts regarding the inmate appeals process.**

7    14.    Between August 2003 and August 7, 2006, Plaintiff filed the following inmate

8    grievances which involve his claims about the IEPP or being retaliated against by Defendant

9    Cooper.

10    a.    November 11, 2003: Appeal no. PBSP-03-03107.  Plaintiff complains

11    about the Lexan cell covering.  (Decl. Wilber ¶ 5, Ex. B.)  Plaintiff appealed to all three

12    levels of review, exhausting this appeal.  (Decl. Wilber ¶ 5, Ex. B; Decl. Grannis ¶¶

13    5(a), 6, Exhibit B.)

14    b.    June 30, 2004: Appeal no. PBSP-04-01702.  Plaintiff complains about Defendant

15    Cooper looking into his cell despite yellow Lexan covering.  (Decl. Wilber ¶ 6, Ex. C.)

16    The appeals coordinator canceled the appeal because Plaintiff refused to interview.

17    (*Id.*)  Plaintiff did not submit appeals to the Second or Director's Level of Review.

18    (Decl. Wilber ¶ 6, Ex. C; Decl. Grannis ¶¶ 4, 11(a), Ex. A.)

19    c.    September 28, 2004: Appeal no. PBSP-4-02473.  Plaintiff alleges that Defendant

20    Cooper filed four false disciplinary reports against him.  (Decl. Wilber ¶ 7, Ex. D.)

21    The appeals coordinator canceled the appeal because Plaintiff refused to interview.

22    (*Id.*)  Plaintiff did not submit appeals to the Second or Director's Level of Review.

23    (Decl. Wilber ¶ 7, Ex. D; Decl. Grannis ¶¶ 4, 11(b), Ex. A.)

24    d.    March 8, 2005: Appeal no. PBSP-05-00614.  Plaintiff complains about the food

25    delivery system and having to wear the behavioral modification suit to the shower.

26    (Decl. Wilber ¶ 8, Ex. E.)  The appeal was granted at the First Level, however, Plaintiff

27    did not submit appeals to the Second and Director's Level of Review.  (Decl. Wilber ¶

28    8, Ex. E; Decl. Grannis ¶¶ 4, 11(c), Ex. A.)

Not. of Mot. & Mot. to Dismiss

*Harris v. Horel, et al.*
C 06-7761 MJJ (PR)

1     e.    July 26, 2005: Appeal no. PBSP-05-01900.  Plaintiff submitted this appeal to

2    challenge the restrictions imposed following an April 30, 2005 disciplinary hearing.

3    (Decl. Wilber ¶ 9, Ex. F.)  Plaintiff was placed on canteen restriction.  (*Id.*)  This

4    appeal was granted at the Second Level of Review once it was determined that Plaintiff

5    should only have been placed on canteen restriction for 90 days, not 180 days.  (*Id.*)

6    Plaintiff did not submit an appeal to the Director's Level of Review.  (Decl. Wilber ¶ 9,

7    Ex. F; Decl. Grannis ¶¶ 4, 11(d), Ex. A.)

8    f.    January 9, 2006: Appeal no. PBSP-06-00060.  Plaintiff submitted this appeal to

9    challenge the entire April 30, 2005 disciplinary report.  (Decl. Wilber ¶ 10, Ex. G.)

10    Plaintiff exhausted this appeal.  (Decl. Wilber. ¶ 10, Ex. G; Decl. Grannis ¶¶ 5(b), 7,

11    Ex. C.)

12    g.    March 30, 3006: Appeal no. PBSP-06-00739.  Plaintiff submitted this appeal to

13    challenge a cell search and subsequent confiscation of a television set.  (Decl. Wilber ¶

14    11, Ex. H.)  Plaintiff exhausted this appeal.  (Decl. Wilber ¶ 11, Ex. H; Decl. Grannis

15    ¶¶ 5(d), 9, Ex. E.)

16    h.    April 17, 2006: Appeal no. PBSP-06-00729.  Plaintiff claimed that Defendant

17    Cooper was retaliating against him for filing inmate grievances.  (Decl. Wilber ¶ 12,

18    Ex. I.)  This appeal was denied at the First Level of Review.  Plaintiff did not submit

19    appeals to the Second or Director's Level of Review.  (Decl. Wilber ¶ 12, Ex. I; Decl.

20    Grannis ¶¶ 4, 11(e), Ex. A.)  Plaintiff did not exhaust this appeal.  (*Id.*)

21    i.    April 19, 2007: Appeal no. PBSP-06-00846.  Plaintiff submitted this appeal

22    challenging the February 24, 2006 disciplinary report.  (Decl. Wilber ¶ 13, Ex. J.)  He

23    also alleged problems with punishments imposed under the IEPP.  (*Id.*)  Plaintiff

24    submitted appeals to all three levels of review, exhausting this appeal.  (Decl. Wilber ¶

25    13, Ex. J; Decl. Grannis ¶¶ 5(c), 8, Ex. D.)

26    j.    April 30, 2006: Appeal no. PBSP-06-01497.  Plaintiff claimed in this appeal

27    that Defendant Cooper was retaliating against him.  (Decl. Wilber ¶ 14, Ex. K.)  On

28    August 8, 2006, the appeals coordinator canceled the appeal for Plaintiff's refusal to

1    interview as required by California Code of Regulations title 15, section 3084.4. (*Id.*)

2    Plaintiff failed to submit appeals to the Second or Director's Level of Review. (Decl.

3    Wilber ¶ 14, Ex. K; Decl. Grannis ¶¶ 4, 11(f), Ex. A.)

4        k.    May 11, 2006: Appeal no. PBSP-06-01295. Plaintiff submitted this appeal

5    challenging the Lexan cell front. (Decl. Wilber ¶ 15, Ex. L.) The appeals coordinator

6    screened out the appeal on May 22, 2006 for adding excessive documents as well as for

7    failing to sign and date the document. (*Id.*) The appeal was again screened out on June

8    1, 2006 for including excessive documents. (*Id.*) The Plaintiff did not submit appeals

9    to the Second or Director's Level of Review. (Decl. Wilber ¶ 15, Ex. L; Decl. Grannis

10    ¶¶ 4, 11(g), Ex. A.)

11        l.    July 23, 2006: Appeal no. PBSP-06-01971. Plaintiff submitted this appeal

12    challenging imposition a SHU term under the IEPP. (Decl. Wilber ¶ 16, Ex. M.)

13    Plaintiff submitted appeals to the Second and Directors Level of Review. (Decl.

14    Wilber ¶ 16, Ex. M; Decl. Grannis ¶¶ 5(e), 10, Ex. F.)

15                                **SUMMARY OF THE ARGUMENT**

16    **PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES FOR HIS
      CLAIMS, THEREFORE THIS COURT MUST DISMISS THIS COMPLAINT.**

17

18        **A.    The Exhaustion Requirement under the Prison Litigation Reform Act is
      mandatory.**

19        The Ninth Circuit held that an inmate's failure to exhaust nonjudicial remedies as required

20    by the Prison Litigation Reform Act (PLRA) is subject to an unenumerated Rule 12(b) motion.

21    *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). The court may look beyond the

22    pleadings and decide disputed issues of fact in deciding a motion to dismiss for a failure to

23    exhaust available administrative remedies under § 1997e(a). *Id.* at 1119-20. If the court

24    determines that the inmate has not exhausted his available administrative remedies within the

25    state prison system, the proper remedy is dismissal without prejudice. *Id.* at 1120.

26        The PLRA states that "no action shall be brought with respect to prison conditions under

27    [42 U.S.C. § 1983], or any other Federal Law, by a [confined prisoner] until such administrative

28    remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress provided in §

Not. of Mot. & Mot. to Dismiss
                                                             *Harris v. Horel, et al.*
                                                               C 06-7761 MJJ (PR)

1  1997e(a) that an inmate must exhaust administrative avenues before bringing suit. *Booth v.*

2  *Churner*, 532 U.S. 731, 741 (2001); *Vaden v. Summerhill*, 449 F.3d 1047 (9th Cir. 2006).

3  Administrative exhaustion is required for all actions brought with respect to prison circumstances

4  or occurrences, whether under § 1983 or any other federal law. 42 U.S.C. § 1997e(a); *Porter v.*

5  *Nussle*, 534 U.S. 516, 524 (2002).

6      The mandatory exhaustion requirement of § 1997e(a) is especially pertinent in light of the

7  Congressional objectives behind PLRA. "Beyond doubt, Congress enacted § 1997e(a) to reduce

8  the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded

9  corrections officials time and opportunity to address complaints internally *before* allowing the

10 initiation of a federal case." *Porter*, 534 U.S. at 524-25 (emphasis added). Accordingly, the

11 Ninth Circuit has held that administrative exhaustion *subsequent* to filing suit does not satisfy

12 mandatory exhaustion requirement under § 1997e(a). *McKinney v. Carey*, 311 F.3d 1198, 1199-

13 1200 (9th Cir. 2002). The Ninth Circuit reaffirmed *McKinney*, holding that the PLRA requires

14 that an inmate exhaust administrative remedies before submitting *any* papers to a federal court.

15 *Vaden*, 449 F.3d at 1050-51.

16      Moreover, the Supreme Court held that "Proper exhaustion demands compliance with an

17 agency's deadlines and other critical procedural rules because no adjudicative system can

18 function effectively without imposing some orderly structure on the course of its proceedings."

19 *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006).

20      The State of California provides its inmates with the right to an administrative appeals

21 process which addresses "any departmental decision, action, condition or policy which they can

22 demonstrate as having an adverse affect upon their welfare." Cal. Code Regs. tit. 15, §

23 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner

24 must complete four levels of appeals: (1) informal level, (2) first formal level (3) second formal

25 level appeal to the institution head or designee, and (4) third level appeal to the Director's level.

26 *Id.* A Director's level appeal decision constitutes exhaustion of the administrative remedies

27 available. Cal. Code Regs. tit. 15, §§ 3084.5, 3084.1(a).

28 \\\

Not. of Mot. & Mot. to Dismiss

*Harris v. Horel, et al.*
C 06-7761 MJJ (PR)

**B.  Plaintiff Failed to Properly Exhaust his Claims in This Action.**

Between November 2003 and December 2006, Plaintiff filed twelve inmate grievances, and of those grievances submitted five to the Directors Level of Review.  Plaintiff failed to submit appeals to the Second and Director's Level of Review in seven of his appeals: PBSP-04-01702, PBSP-04–2473, PBSP-05-00614, PBSP-05-01900, PBSP-06-00729, PBSP-06-01497, PBSP-06-01295.

The following chart illustrates the basis for each of the twelve appeals submitted by plaintiff and whether those appeals were in fact exhausted and which claims are related to the causes of action in the litigation before this Court.

| Appeal No. | Description of Appeal | Date of Exhaustion | Issue Appealed |
|---|---|---|---|
| PBSP-03-03107 | Complaints about the Lexan cell covering and the unequal treatment related to the covering. | 6/4/2004 | Appeal does not involve claims recognized by this Court. |
| PBSP-04-01702 | Complaints about Defendant Cooper looking into his cell despite yellow Lexan. | Not exhausted. | Issue related to retaliation claim. |
| PBSP-04-02473 | Complaints about four disciplinary reports submitted by Defendant Cooper. | Not exhausted. | Issue related to retaliation claim. |
| PBSP-05-00614 | Complaints about the Food Delivery System and having to wear the behavior modification suit to the shower. | Not exhausted, appeal granted at the First Level of Review. | Appeal does not involve claims recognized by this Court. |
| PBSP-05-01900 | Complaints about the punishment (length of canteen restriction) imposed following the April 3, 2004 disciplinary report for indecent exposure. | Not exhausted, appeal granted at Second Level of Review, canteen restriction should have been for 90 days not 180 days. | Appeal does not involve claims recognized by this Court. |
| PBSP-06-00060 | Complaints about the loss of privileges following the April 30, 2005 disciplinary report for indecent exposure. | 5/16/2006 | Appeal does not involve claims recognized by this Court. |

| Appeal No. | Description of Appeal | Date of Exhaustion | Issue Appealed |
|---|---|---|---|
| PBSP-06-00739 | Complaint about a cell search and confiscation of a television | 9/22/2006 | Appeal does not involve claims recognized by this Court. |
| PBSP-06-00729 | Retaliation by Defendant Cooper. | Not exhausted. | Issue related to retaliation claim. |
| PBSP-06-00846 | Complaints about the February 24, 2006 disciplinary report. | 8/29/2006 | Appeal does not involve claims recognized by this Court. |
| PBSP-06-01497 | Retaliation by Defendant Cooper. | Not exhausted. | Issue related to retaliation claim. |
| PBSP-06-01295 | Complaints about the Lexan cell covering. | Not exhausted. | Appeal alleges violations of Eighth Amendment along with due process and equal protection violations. |
| PBSP-06-01971 | Complaints about a SHU term imposed under the IEPP. | 12/8/2006 | Appeal does not involve claims recognized by this Court. |

**1.    Plaintiff failed to exhaust his administrative remedies in relation to his claim of retaliation for filing inmate grievances.**

Of the twelve appeals submitted by Plaintiff, only four directly relate to his claim of retaliation by Defendant Cooper, PBSP-04-01702, PBSP-04-02473, PBSP-06-00729 and PBSP-06-01497. It is clear that Plaintiff failed to submit any appeals to either the Second or Director's Level of Review in relation to his retaliation claim. As the chart clearly shows, Plaintiff is aware of and capable of complying with the exhaustion requirement. Therefore, this Court must dismiss the retaliation claim for failure to exhaust.

**2.    Plaintiff failed to exhaust his administrative remedies in relation to his claim of an Eighth Amendment violation based upon the IEPP.**

Of the twelve appeals submitted by Plaintiff, seven involve aspects related to punishments or security precautions imposed under the IEPP. However, in reviewing these appeals it becomes clear that Plaintiff was not complaining that the policy violated the Eighth Amendment, but

1    rather complained about the length of punishments imposed, lack of notice and due process, the

2    security precautions imposed, or his right to be treated equally. Of these seven appeals Plaintiff

3    exhausted four appeals: PBSP-03-03107, PBSP-06-00060, PBSP-06-00846, and PBSP-06-

4    01971.

5        Plaintiff's complaint alleges that the IEPP violates the Eighth Amendment's prohibition

6    against cruel and unusual punishment. (Compl. at 3.) But, the inmate grievances submitted by

7    Plaintiff do not involve issues that would lead prison officials to understand he was complaining

8    about the constitutionality of the IEPP.

9        For example, in appeal number PBSP-03-03107, Plaintiff complains about the Lexan cell

10    covering which, he alleges, violates his Fourteenth Amendment equal protection rights. Plaintiff

11    however does not challenge the IEPP, but rather one of the security precautions employed.

12    Furthermore, Plaintiff challenges the language in California Code of Regulations title 15, section

13    3007 defining what sexual behavior is. This appeal does not provide any notice to Defendant

14    Horel that Plaintiff is claiming that the IEPP imposes cruel and unusual conditions of

15    confinement.

16        Appeal numbers PBSP-05-00614, PBSP-05-01900, PBSP-06-00060, PBSP-06-00846,

17    and PBSP-06-01971 challenge the imposition of certain punishments (canteen restrictions, SHU

18    term), security precautions (behavior modification suit), timing of disciplinary reports, and the

19    length of time for the subsequent punishments (90 day versus 180 day canteen restriction)

20    following several disciplinary hearings resulting in findings of guilt for indecent exposure. In

21    none of these appeals does Plaintiff allege that Defendant Horel, or even the CDCR, has violated

22    his right to be from cruel and unusual punishment. Rather the appeals complain about the

23    punishments, procedures, or precautions imposed by the IEPP as a result of Plaintiff choosing to

24    commit acts of indecent exposure. These appeals have no bearing on the Eighth Amendment

25    claim recognized by the Court.

26        Of seven appeals submitted by Plaintiff that incidentally relate to the IEPP, only one

27    appeal, number PBSP-06-01295, is based upon an Eighth Amendment challenge. The PLRA's

28    exhaustion requirement exists in part to give the agency "an opportunity to correct its own

Not. of Mot. & Mot. to Dismiss                                                    *Harris v. Horel, et al.*
                                                                                  C 06-7761 MJJ (PR)

1   mistakes with respect to the programs it administers before it is haled into federal court, and it

2   discourages disregard of the agency's procedures." *Woodford*, 126 S. Ct. at 2385 (internal

3   quotations omitted). It addresses a possible Eighth Amendment violation under the IEPP based

4   upon the security precaution of placing yellow Lexan over cell doors/windows. Plaintiff

5   submitted this appeal on May 7, 2006. (Stmnt. Facts ¶ 14(k).) On May 13, 2006, this appeal was

6   denied at the informal level based upon the *Madrid* court order. (*Id.*) Plaintiff submitted an

7   appeal to the First Level of Review on May 15, 2006 and on May 22, 2006, the appeals

8   coordinator screened out the grievance for failing to comply with California Code of Regulations

9   title 15, section 3084.2(a)(1). (*Id.*)

10   California Code of Regulations title 15, section 3084.2(a)(1) states: "A limit of one

11   continuous page, front and back, may be attached to the appeal to describe the problem and

12   action requested in Sections A and B of the form." Cal. Code Regs title 15, § 3084.2(a)(1).

13   Plaintiff submitted an extra page to describe his problem in appeal number PBSP-C-06-01295.

14   The appeal was returned to Plaintiff and he again resubmitted the appeal with the extra page.

15   (*Id.*) On June 1, 2006, the appeals coordinator again rejected the appeal for the same reasons

16   previously given. (*Id.*) Plaintiff failed to resubmit the appeal correctly according to the

17   regulations and failed to submit appeals to the Second and Director's Level of Review. (*Id.*)

18   Plaintiff did not comply with CDCR's procedural rules, a requirement for proper exhaustion. *See*

19   *Woodford*, 123 S. Ct. at 2386. Therefore, this Court must dismiss the claim relating to any

20   Eighth Amendment violations for Plaintiff's failure to exhaust.

21   Furthermore, in a subsequent appeal, number PBSP-C-06-01971, Plaintiff challenges the

22   imposition of an extended SHU term following Plaintiff's habitual indecent exposure, as allowed

23   under the IEPP. (Stmnt. Facts ¶ 14(l).) Plaintiff did not complain about the constitutionality of

24   the IEPP, but rather simply requested a re-evaluation of his SHU commitment. (*Id.*) Plaintiff

25   exhausted this appeal on December 8, 2006, again showing his ability to comply with the

26   requirements of the appeals process. (*Id.*)

27   In Plaintiff's Complaint he alleges that the IEPP prohibits him from going to canteen for

28   six months, preventing him from purchasing deodorant, lotion, or shampoo, and as a result he

Not. of Mot. & Mot. to Dismiss

*Harris v. Horel, et al.*
C 06-7761 MJJ (PR)

16

1 | smelled "musty." (Compl. at 4.) None of Plaintiff's inmate grievances relate to these issues.

2 | Plaintiff also alleges that because he was denied canteen he was prevented from writing letters.

3 | (Compl. at 4-5). Again, none of his inmate grievances address this issue.

4 |      Plaintiff also alleges that the security precautions implemented under the IEPP (Lexan

5 | covering and behavior modification suit) make him standout and other inmates "won't talk to or

6 | associate themself [sic] with me, and even assault him." (Compl. at 9.) Again, Plaintiff has not

7 | submitted any inmate grievances relating to these issues.

8 |      In sum, Plaintiff failed to properly exhaust his claim of retaliation against Defendant

9 | Cooper. Plaintiff also failed to properly exhaust his Eighth Amendment claim against Defendant

10 | Horel for implementing an indecent exposure policy in violation of Plaintiff's right to be free

11 | from cruel or unusual punishment. This Court must dismiss this action.

12 | <center>**CONCLUSION**</center>

13 |      This action should be dismissed in its entirety under Federal Rules of Civil Procedure

14 | 12(b) for Plaintiff's failure to exhaust administrative remedies as required by the PLRA.

15 |

16 |      Dated: October 23, 2007

17 |

18 |                                  Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

19 |

20 | DAVID S. CHANEY
Chief Assistant Attorney General

FRANCES T. GRUNDER
Senior Assistant Attorney General

21 |

22 | MICHAEL W. JORGENSON
Supervising Deputy Attorney General

23 |

24 |

25 |

26 | EMILY L. BRINKMAN
Deputy Attorney General
Attorneys for Horel and Cooper

27 |

28 |

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:    **Harris v. Horel et al**

Case No.:     **C 06-7761 MJJ (PR)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On October 25, 2007, I served the attached

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**

**DECLARATION OF C. PATTEN IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

**DECLARATION OF N. GRANNIS IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**DECLARATION OF CHRIS E. WILBER IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**DECLARATION OF WILLIAM BARLOW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Earnest S. Harris
H-63617
Pelican Bay State Prison
P.O. Box 7500
Crescent City, CA 95532-7500
In pro per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **October 25, 2007**, at San Francisco, California.

| | |
|---|---|
| M. Xiang | |
| Declarant | Signature |

20110643.wpd