In The United States District Court
for the northern District of California

1.
2. Earrnest S. Harris
     Petitioner,                              Case No. C-06-7761 MJJ (PR)
3.    v.
4. Robert A. Horel
5.      Respondent                            Motion: grant Summary judgment on
6.                                            behalf of the petitioner.

FILED
DEC 12 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7. Summary judgment should be granted in favor of the petitioner for the reasons
8. that respondent has fail to dispute any of the facts alleged in the lawsuit,
9. instead, the Attorney general continue to falsily claim the petitioner did not
10. exhaust his state/administrative remedies.
11. In the 602 (Appeal) case no. PBSP. C03-03107 the Second level review states,
12. "Harris claims that this is inhumane treatment in violation of his constitutional
13. rights".
14. On the Director's level Review, not only did petitioner put the restrictions
15. amounted to cruel and unusal peinishment, petitioner also cited Madrid v. gomez
16.                                   In the Attorney general's Exhibits theres no
17. statements made by the petitioner. I do not know if the Attorney general
18. purposely left my statements on the Director level off, but it's not in the Exhibits,
19. so, the petitioner will send the court the original '602 with "all" the petitioners
20. statements and allegations. (Since I'm having problems with the P.B.S.P. Law Library
21. over chenging me for photocopies, I'm not going to have the original 602 photocopied, instead
22. I'll write it myself on one of copies sent by the Attorney general since its plank.)
23. As for %cooper Bdg #61919, As I stated before its a differents between filing a 602
24. (Appeal) and filing a Staff complaint. 602's govern under title 15 section 3084.5, A staff
25. complaint is govern under title 15 section 3391, penal code section 832.5 "You can not
26. Appeal a staff complaint decision. Their two different types of procedures, 602/citizen complaint
27. Petitioner has exhaust all administrative remedies and requesting that the United
28. states District court to grant petitioners claims for relief
note: A staff complaint is actually a citizen complaint, anyone can file this complaint.
If someone comes up to visit a inmate and have problems with a prison guard
in regard to the prison guard conduct they can file a citizens complaint. But they
"can not Appeal the decision" and this what I filed against %cooper Bdg 61919, not a 602
                                    (1.)                                    Thank you

(Exhibit 9# ~~201~~)

C-22/21

| STATE OF CALIFORNIA | | | DEPARTMENT OF CORRECTIONS |
|---|---|---|---|
| **INMATE/PAROLEE APPEAL FORM** CDC 602 (12/87) | Location: Institution/Parole Region 1. PBSP 2. _____ | Log No. 1. C03-03107 2. _____ | Category 11 security restriction cell front |

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME Ernest Harris | NUMBER H63617 | ASSIGNMENT | UNIT/ROOM NUMBER C2-121 C |
|---|---|---|---|

**A. Describe Problem:** On Nov. 10, 2003 Maintence came to my cell and ask me to step into the shower so they can fix my door, they replaced the lexan glass with a solid covered fabric. I can not see out of the cell. I'm the only one in my unit with this covered door. I feel I'm being singled out and discipline for something. The cell front is inhumane. I already in the S.H.U lockdown 22½ hrs. a day. I can not get no sunshine, light in my cell and it makes me feel closed in, or blocked out. And I'm not getting treated equal, and its humiliating. Like I'm caged and should not be seen. I have not received no disciplinary paper, for how long or why this has been done.

If you need more space, attach one additional sheet.

**B. Action Requested:** I would like to be moved, I feel this treatment is inhumane and violates Equal liberty interest, of Due process of fifth and fourteenth Amendment. (Kentucky Dept. of correction v. Thompson 490 U.S. 454, 460 (1989)) (Meachum v. Fano 427 U.S. 215, 223-24 (1976).) (Civil Rights Act 42 U.S.C. 1983)

Inmate/Parolee Signature: _Ernest Harris_    Date Submitted: Nov. 10, 2003

**C. INFORMAL LEVEL (Date Received:** 11-10-03 **)**

Staff Response: IN REFERENCE TO THE MEMO FROM CAPTAIN C. PATTEN DATED AUGUST 29, 2003, INMATES THAT ARE HABITUAL OFFENDERS OF INDECENT EXPOSURE. A HABITUAL CHRONIC INDECENT EXPOSURE OFFENDER IS AN I/M WHO HAS COMMITTED 2 OR MORE OFFENSES WITHIN A ONE-YEAR PERIOD. THE HABITUAL OFFENDERS WILL HAVE COLORED LEXAN PLACED ON THE CELL FRONT. YOUR AWC FILE DOCUMENTS THAT YOU HAVE HAD 2 OFFENSE IN THE LAST YEAR. 8-8-03 AND 10-24-03.

Staff Signature: SGT. COULTER    Date Returned to Inmate: 11-11-03

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

first of all I'm innocent of both allegations, and have "not" been found guilty of anything. According to Cali. Dept. of Corrections procedure, before a memo is to take effect it must be issued to all Inmate at less three months in advances. This has not been done. I have never received this memo. Its as if legislature (next page)

Signature: _Ernest Harris_    Date Submitted: 11-12-03

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

1st AWSGN
NOV 17 2003

2nd Appeals
JAN 12 2004

MM

First Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: __11-24-03__    Due Date: __1-2-04__

Interviewed by: __See Attached__

_____
_____
_____
_____
_____
_____

Staff Signature: _M Castellaw_    Title: __Capt__    Date Completed: __1-5-04__
Division Head Approved:
Signature: _____    Title: __CAN__    Returned Date to Inmate: __1-5-04__

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

first I would like to address the fact that my petition was filed on Nov. 12, 2003 and I did not get a response until the 1-9-04, Nearly two months. When it states my appeal is to be answered in fifteen days As for As the denial of this appeal at first level (see attached page)

Signature: __Earnest Harris__    Date Submitted: __1-12-04__

Second Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: __1-12-04__    Due Date: __2-10-04__

☒ See Attached Letter

Signature: __John Carr__    Date Completed: __2-4-04__
Warden/Superintendent Signature: __R. Kirkland__    Date Returned to Inmate: __FEB 1 0 2004__

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

What I was indicating to, was advertingly or inadvertingly female guards will see inmates nude, if a female guard works overlooking the showers or to stripout inmates during her time working in a male prison she will have to circum to the fact that she may see a Inmate nude. I'm in the S.H.U. I can only shower three times aweek so to keep my hygiene up I birdbath in my sink inside

Signature: __Earnest Harris__    Date Submitted: Feb. 2004 (next page)

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
☐ See Attached Letter

Date: __JUN 4 2004__

CDC 602 (12/87)

makes a new law and neglects to inform the public. Just wait until the law is violated and then punish them without any notice or warning of the penalty. Now once this memo begans to surface wouldn't it make for an unhealthy environment, were everyone knows anyone living behind a painted cell is because he keep exposing himself. And other Inmates may spit, gash, spear, or doing something to get that individual out of their Pod. And what happens when I found not guilty, do the Prison guards go around and tell all the other inmates it o.k. to talk to me again I was innocent of those allegations. It goes back to Due process and Equal treatment In my Block C-2 theres 48# cells and mine is the only one that has the front covered with paint. If over 1,200 cells in the S.H.u. if 10# cells are painted it still singles out individuals and cast a bad judgment on them by other inmate. So is Capt. Patten going to bear the responsibility for singling individuals out in this manner. Because I've gotten along well with every Inmate I've met before my cell front was painted, now if that change it going to be because of capt. Patten's memo, which is not in the title 15 procedures, under Indecent exposure it say I will be written a 115 It does not say my whole cellfront will be painted in an attempt to humiliate, single out and cause Prison guards and Inmates to withdraw from another Inmate. Another problem is Sgt. Coulter state I was written-up on 8·8·03 but the memo was written on 8·29·03, 21# days after the incident. So to punish me for that violates ex-post-facto prohibitions (before a law is finalized). In challenging the memo Inmates retain a right to personal privacy, guaranteed by the fourteenth amendment. (Kent v. Johnson 821 F.2d 1220, 1226 (6th cir. 1987).) Whereas, I have had numerous female guard stand in front of my door and watch as I stripout to go to, Court, attorney visits, Medical or when they search the cell block, twice a day female guard are called down to help stripout Kitchen workers, Its times when I'm in my cell washing-up (nude), or using the bathroom and a female guard walks by and I may get written-up and have my cell front painted, whereas a male guard walks by and say's nothing. This is a male prison. I have a right to wash-up or use the bathroom without being "casted" and have my cellfront painted so none of the Inmates can see me or none of the guards or maintance workers are able to see in my cell. As well as it has "no logic" female guards still have to look inside my cell when they take count. plus those two incidents occurred in Cell I'm in another block (C-2) So why is this following me from another block, I personally feel its "retaliation" by the administration, for filing grievance against the female guard who written me up on 10·24·03. So why did it take seventeen days to paint my door front, from (10·24·03)-(11·10·03) the day the cellfront was painted. Inspite all of this the treatment is still inhumane and should end before it begans to bring humiliation to Inmates.

## FIRST LEVEL SUPPLEMENTAL PAGE

RE: PELICAN BAY STATE PRISON (PBSP)
Appeal Log # PBSP-C-03-03107
First Level Reviewer's Response

HARRIS, H-63617

### APPEAL DECISION:

DENIED

### APPEAL ISSUE: (Modified)

You are appealing the fact that you were placed on permanent Yellow Lexan cell front cover. You further allege that this is a violation of equal liberty interest, of due process of the Fifth and Fourteenth Amendment (Kentucky Department of Corrections V. Thompson 490 U.S. 454,460 (1989) also (Meachum V. Fano, 427 U.S. 125,223-224 (1976). (Civil Rights Act 42 U.S.C. (1983).) Specifically, you are requesting to be moved to another unit with out the Yellow Lexan cell covering.

### APPEAL RESPONSE:

A review of your appeal has been completed. Your complaint, including your requested remedial action, has received careful consideration. Correctional Sergeant T. Bosley interviewed you concerning the contents of this appeal on December 22, 2003.

During the course of this interview, you stated that you had nothing further to add to the information, which was provided in your written appeal of this issue. It is your contention that placing you behind a Yellow Lexan cell front is a violation of your Civil Rights. You further contend that the Yellow Lexan cell covering places you at risk for retaliation from other inmates that may spit, gas or spear you, to have you removed from the pod. You allege this is due to their knowledge of the reason for the placement of the Yellow Lexan cell covering. You further contend that PBSP can not enforce any new policy with out giving all inmates 90 days advance notice. You further state that you have not received a copy of the memorandum regarding the Yellow Lexan cell covering.

### SECURITY PRECAUTIONS/ RESTRICTIONS:

Security precautions are measures taken specifically when supervising or working with Level IV General Population (GP) and segregated inmates, to assist and alert correctional employees to prevent or identify previously documented behavior that has proven to be a threat to other inmates, staff and institutional security and safety. Security precautions are tools consistently used by staff for a determinate period to prevent, curtail and identify the threatening behavior. Security Precautions for the Security Housing Unit (SHU) are found in Operational Procedure (OP) 222. Security Precautions are implemented by Correctional Officers/Sergeants and approved, tracked and reviewed by Facility Captain/Lieutenant weekly.

Appeal Log # PBSP- C-03-03107
Harris, H-63617
Page 2

In the Psychiatric Services Unit (PSU), Enhanced Outpatient Program, these precautions are reviewed weekly by IDTT. Security precautions are not used as a punishment or to be confused with disciplinary dispositions. The following are some of the tools available as Security Precautions to manage Indecent Exposure behavior:

**1st Offense In cell or to Control Booth**
PSU, SHU or ASU- May Cover cell with colored Lexan cell front.

**2nd Offense In cell or to Control Booth**
PSU, SHU or ASU- Cover cell with bright colored Lexan.

→ The memo addressed by Sergeant Coulter in his informal response is actually a Confidential Lesson Plan. As such, you will not be allowed to receive a copy of this lesson plan.

In further pursuit of the allegations contained in this appeal, HARRIS' Central File was reviewed. The following is a chronological list of Serious Rules Violation Reports (RVR) (CDC-115'S) involving California Code of Regulations, Title 15, section **3007. Sexual Behavior,** which states in part the following:

*"Inmates may not participate in illegal sexual acts. Inmates are specifically excluded in laws, which remove legal restraints from acts between consenting adults. Inmates must avoid deliberately placing themselves in situations and behaving in a manner which is designed to encourage illegal sexual acts."*

1) On 05/07/99, HARRIS committed an act of INDECENT EXPOSURE against Correctional Officer K. G. Northrup. This case was not referred to the Del Norte District Attorney (DA).
   RVR Log #         C99-05-0007         Guilty as charged-Div D
                                         No credit loss due to failure to meet time constraints.

2) On 12/27/99, HARRIS committed an act of INDECENT EXPOSURE against Medical Technical Assistant C. Broce.
   RVR Log #         C99-12-0013         Guilty as charged-Div D LOC 30 days

3) On 08/08/03, HARRIS committed an act of DISORDERLY CONDUCT (PC 647) against Correctional Officer J. Hernandez.
   RVR Log #         C03-10-0027         Held pending DA prosecution.
   IR Log #          PBP-C11-03-10-0634

4) On 10/24/03, HARRIS committed an act of INDECENT EXPOSURE against Correctional Officer A. Delaunay.
   RVR Log #         C03-10-0026         Held pending prosecution by DA
   IR Log #   PBP-C11-03-10-0634

Appeal Log # PBSP- C-03-03107
Harris, H-63617
Page 3

## DETERMINATION OF ISSUE:

Based on the investigation conducted, your contention that the security precautions placed on you are unjust, unsafe and causing you undue pain and suffering, is unfounded and not supported by evidence. Consequently, you have offered no demonstrative need to remove, dismiss, or reduce a validly placed security precaution. Both of these security precautions will be reviewed on a monthly basis by the SHU, Associate Warden, to determine whether to extend or cancel this security precaution. Your placement in a Yellow Lexan equipped cell is justified and warranted. Based on the above this portion of your appeal is **DENIED** at the First Level of Review.


M. CASTELLAW          Date 1-2-04
Facility Captain
Facility C

B. J. O'NEILL          Date 1-5-04
Associate Warden
Security Housing Unit

Secondly, I would like to read to you the dictionary definition of Security: (freedom from risk or danger); The definition of threat: (An expression of an intention to inflict pain, injury, evil, or punishment on a person or thing.)

Now the "alleged" accusation which allegely occurred on Oct. 24, 2003 states in parts; C/O Delaunay (female guard) came up to my cellfront and I was standing in my cell nude.

Now, how, can these accusations be considered a security threat, that will cause injury, inflict pain, upon a person or thing. As stated in this petition I have not been found "guilty" of "anything". And also stated in this petition although I'm incarcerated I retain a right to privacy.

Now in Answering it states: Title 15, sec. 3007:

Inmates may not participate in illegal sexual acts. Inmates are specifically excluded in laws, which remove legal restraints from acts between consenting adults. Inmates must avoid deliberately placing themselves in situations and behaving in a manner which is designed to encourage illegal sexual acts.

In regard to the statute itself, Its "ambiguous" meaning it has "no clarity" to which is deemed an "illegal sexual act". Now a "Sexual Act" has to be something "Overt Act," meaning, you would have to be doing something Sexual and intenting to do something sexual. Standing in my cell nude is not "act" because I'm not doing anything, and its not illegal because its not in a public place, Its inside a place that I reside, for example, I may sleep nude. The C/O states this occurred at breakfast (6:00 a.m.) plus, I'm on the food delivery system. So, theres no reason to look inside my cell, the door that operates the food delivery system is before you get to my cellfront So, you do not have to pass my cell in order to do the food delivery system. So I can be feed. And C/O Delaunay states, that she walked in front of my cellfront and looked in. (for what)

Thirdly, In the Answering it states two "old" 115's that occurred on Dec. 27, 1999. Now the closes incident to that 115 is The allegation on 8·8·03 In which is three years, eight months apart But its being added as if theres a connect or a pattern, but whats not stated is the fact that I've been incarcerated (over→)

(11)

since nov. of 1992 eleven years and in eleven years you have four incidents, two which are still pending, two I was found guilty of but did not participate in the either of the hearing and any event "No colored" Lexan was placed on my cell and this was a four year different between time, nor dose it prove I'm guilty of thes allegations. Being that the content and the situation in all four cases are different. But it proves my point, "That, if it was not an Security threat" Then, why is it a security threat now. Two incident within six months, I was written up, loss of credit and that was it. And I did not receive a similar write-up for four years. And as stated in this petition, female c/o's still have to look inside my cell, so, the whole thing among other things is pointless, "What is the precaution." As outline in the title is sec. 3007 its disciplinary action that are to be taken if found guilty of this section. Covering my cell is not listed

fourthly, In the Answering it states that this security precaution is not punishment or to be confused with disciplinary action. This is just "ludicrous" and on top of that fact that my cell is covered "Indifinite" I just receive a memo stating I will be force to wear a "Behavioral control suit" whenever I leave my cell. I receive this on Jan. 9, 2004 "two and half months after the incident on 10.24.03. And I'll assume since it say's security precaution the this is not punishment or to be confused with disciplinary actions either. And yes I will have to wear this suit that looks like a Staitjack Indifinite, all behind the same incident on 10.24.03 In which I "have not" been found guilty of.

fifthly, In the Answering, it states that I did not and will not recei a copy of the memo because its a "confidential lesson plan" In regards to the memo, it states that you have to have two write-up's in one year, but the 8·8·03 write-up occurred before the memo was written 8-29-03. Now, by, the prison not notifying me of this memo which carries penalities, In both regards violates ex·post·facto prohibition of the United States constitution see (Beazell v. Ohio (1925) 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed 216); (Collins v. Youngblood (1990) 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed 2d 30) you can not punish a person without first giving warning of the penalties, or for some thing that occurred before the law was implemented, it Viole or Post facto law

It was not inhumane or cruel and unusual punishment, but it did not inspect the living condition in which I'm being force to live indifinitely, with the behavior suit, my cell covered with paint and on escort status all restrictions indifinitely And this is way in the case of Madrid v. Gomez 889 F. Supp. 1146 (N.D. Cal. 1995) it states that "the cell front door are not permitted to have coverings of any Kind on them" (page 10, S.H.U. Inmate orientation package)

The other issue is, do this restriction violates Ex post facto prohibitions (any regulation which punishes as a crime an act previously committed, which was innocent when done)

As written in the informal level of this petition, The memo was written on 8.29.03, And a Inmate would have to have been written up twice, Now one of those write up's occurred on 8.8.03, eleven day's after the memo was written. So the write up on 8.8.03 should not be included, because the memo did not go into affect until 8.29.03 And it would be two write up's after 8.29.03, you can not say, well, he had two write up's four years ago in attempt to punish me for that now (refering the incident of 12.27.99; 5.7.99)

(Due process: The principle on which the clause is based - the notion that persons have a right to fair warning of that conduct which give rise to criminal penalties (Keeler v. Superior Court (1970) 2 C.3d. 619, 634, 87 C.R. 481, 470 P.2d. 617)

The petitioner has never receive a notice of the penalties associated with this offense. In the first level response, it states: The memo addressed by Sergeant Coulter in his informal response is a Confidential lesson plan, and will not be allowed to receive it.

The California code of Regulations Title 15, states that Inmate must be given notice of regulations before they are implement (Penal code Section 5058.3, 5054) And this memo fails to adhere to these rules. Furthermore, the Title 15 states, If a Inmate is place on restriction for more than 30# day's the restriction must be reviewed monthly by someone higher than a lieutenant. I have not had any review or been informed that a review was done. And I've been placed on this restriction for four months. I personally feel that the whole thing is retaliation for me writing a citizen complain on the female guard who wrote me up on 10.24.03. My cell front was paint 3# weeks after the incident and the behavior suit 2# and half months later.

it was not inhumane or cruel and unusual punishment, but it did not inspect the living condition in which I'm being force to live indifinitely, with the behavior suit, my cell covered with paint and on escort status all restrictions indifinitely. And this is way in the case of Madrid v. Gomez 889 F. Supp. 1146 (N.D. Cal. 1995) it states that "the cell front door are not permitted to have coverings of any kind on them". (page 10, S.H.U. Inmate orientation package)

The other issue is, do this restriction violates Ex. post. facto prohibitions (any regulation which punishes as a crime an act previously committed which was innocent when done).

As written in the informal level of this petition, the memo was written on 8.29.03, And a Inmate would have to have been written up twice, Now one of those write-up's occurred on 8.8.03, eleven day's after the memo was written. So the write-up on 8.8.03 should not be included, because the memo did not go into effect until 8.29.03 And it would be two write-up's after 8.29.03, You can not say, well, he had two write-up's four years ago in attempt to punish me for that now (refering the incident of 12.27.99; 5.7.99)

(Due process: The principle on which the clause is based - the notion that persons have a right to fair warning of that conduct which give rise to criminal penalties (Keeler v. Superior Court (1970) 2.L.3d. 619, 634, 87 C.R. 481, 470 P.2d. 617)

The petitioner has never receive a notice of the penalties associated with this offense. In the first level response, it states: The memo addressed by Sergeant Coulter in his informal response is a confidential lesson plan, and will not be allowed to receive it.

The California code of Regulations Title 15, states that Inmate must be given notice of regulations before they are implement (penal code Section 5058.3, 5054) And this memo fails to adhere to these rules. Furthermore, The Title 15 states, If a Inmate is place on restriction for more than 30# day's the restriction must be reviewed monthly by someone higher than a lieutenant. I have not had any review or been informed that a review was done. And I've been placed on this restriction for four months. I personally feel that the whole thing is retaliation for me writing a citizen complain on the female guard who wrote me up on 10.24.03. My cell front was paint 3# weeks after the incident and the behavior suit 2# and half month later.

## PROOF OF SERVICE BY MAIL

(C.C.P. Section 101(a) # 2015.5, 28 U.S.C. 1746)

I, Earnest S. Harris, am a resident of Pelican Bay State Prison, in the County of Del Norte, State of California. I am over eighteen (18) years of age and am a party to the below named action.

My Address is: P.O. Box 7500, Crescent City, CA 95531.

On the 5th day of Dec., in the year of 20 07, I served the following documents: (set forth the exact title of documents served)

Motion for Summary Judgment in favor of the petitioner

on the party(s) listed below by placing a true copy(s) of said document, enclosed in a sealed envelope(s) with postage thereon fully paid, in the United States mail, in a deposit box so provided at Pelican Bay State Prison, Crescent City, CA 95531 and addressed as follows:

Emily L. Brinkman
Office of the Attorney General
455 Golden Gate Avenue Suite 1100
San Francisco, Ca. 94102-3664

United States Northern District Court
450 Golden Gate Avenue
San Francisco, Ca. 94102

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 05 day of Dec., 20 07.

Signed: _____
(Declarant Signature)

Rev. 12/06

| PELICAN BAY STATE PRISON |
| --- |
| SECOND LEVEL REVIEW |

DATE: FEB 1 0 2004

Inmate HARRIS, H-63617
Pelican Bay State Prison
Facility C, Security Housing Unit
Building 2, Cell 121

RE:  WARDEN'S LEVEL DECISION             APPEAL: DENIED
     APPEAL LOG NO. PBSP-C-03-03107      ISSUE: PROGRAM

This matter was reviewed by JOE MCGRATH, Warden, Pelican Bay State Prison (PBSP). Correctional Sergeant T. BOSLEY interviewed the inmate on December 22, 2003.

## ISSUES

HARRIS objects to the addition of a lexan covering to his cell door.

## FINDINGS

### I

According to the information furnished by HARRIS with his Appeal, HARRIS claims that a yellow lexan covering was added to his door on November 10, 2003. HARRIS claims that he cannot see out his door. HARRIS claims that the covering blocks the sunlight and makes him feel "closed in." HARRIS claims that this is inhumane treatment in violation of his constitutional rights. HARRIS claims that he is being singled out without due process. HARRIS claims that CDC procedures entitle him to receive written notice of any policy changes three months in advance. In response to the Appeal answers identifying him as a persistent and continuing sex offender within the institution, HARRIS claims that he is not guilty of those charges, and that these actions presume his guilt in advance of his Disciplinary Hearing. HARRIS claims he has a right to his privacy, and this policy violates his right to privacy because he is being penalized when staff members violate his privacy. HARRIS claims that standing in his cell nude does not qualify as a sexual offense, "Because I'm not doing anything and its not illegal because its not in a public place, its inside a place that I reside, for example, I may sleep nude."

## DETERMINATION OF ISSUE

The First Level Response remains an adequate, appropriate response to the claims of this inmate. This inmate has been associated with multiple indecent exposure offenses. In order to prevent any continuation of these offenses, a lexan covering has been added to his cell front that screens the inmate from the view of staff members. This lexan covering includes a window at eye level that does allow the inmate to see out of his cell. The lexan covering is designed to allow light into the cell. Whether or not the inmate feels that he has been punished by these measures, this is intended as a security precaution. It is designed to prevent future misconduct. It is designed to stop the inmate from continuing his offensive conduct toward staff members. If the inmate finds these precautions uncomfortable, this is unfortunate. However, these precautions will remain in place so long as they remain necessary to stop this inmate from continuing his offensive conduct.

Supplement Page 2
HARRIS, H-63617
Appeal # PBSP-C-03-03107

In this Appeal, HARRIS argues that he has a right to privacy and staff members have violated his privacy.

This statement represents a serious misunderstanding by this inmate. The courts, including the United States Supreme Court, have ruled on this issue any number of times. The message is always the same. No inmate has any right to privacy at any time. All actions of any inmate are public actions. This is because penological interest demands keeping the inmate under constant observation at all times. While the inmate may live in that prison cell, it is not his home, and it does not give him the privileges of his home. It is a prison cell. It is subject to constant public inspection at any and all times. It is a public space and HARRIS must behave accordingly.

HARRIS has no more right to stand naked in his prison cell than he has a right to stand naked in the middle of a supermarket. Both are public places. An inmate does not have the right to sleep in the nude. The inmate must keep himself covered at all times and under all circumstances. If the inmate does not meet this obligation, the inmate can and will be charged with the sex offense of *Indecent Exposure*. The fact that this inmate does not understand that this conduct cannot and will not be tolerated at any time is evidence in support of the continuing need for this security precaution. APPEAL DENIED.

MODIFICATION ORDER

No modification of this decision or action taken is required.

*R. Kirkland*
4 JOE MCGRATH
Warden
Pelican Bay State Prison

RJC 2-4-04-#38

| PELICAN BAY STATE PRISON |
|---|
| SECOND LEVEL REVIEW |

DATE: FEB 1 0 2004

Inmate HARRIS, H-63617
Pelican Bay State Prison
Facility C, Security Housing Unit
Building 2, Cell 121

RE: WARDEN'S LEVEL DECISION  　　　　　　APPEAL: DENIED
　　　APPEAL LOG NO. PBSP-C-03-03107　　　ISSUE: PROGRAM

This matter was reviewed by JOE MCGRATH, Warden, Pelican Bay State Prison (PBSP). Correctional Sergeant T. BOSLEY interviewed the inmate on December 22, 2003.

## ISSUES

HARRIS objects to the addition of a lexan covering to his cell door.

## FINDINGS

### I

According to the information furnished by HARRIS with his Appeal, HARRIS claims that a yellow lexan covering was added to his door on November 10, 2003. HARRIS claims that he cannot see out his door. HARRIS claims that the covering blocks the sunlight and makes him feel "closed in." HARRIS claims that this is inhumane treatment in violation of his constitutional rights. HARRIS claims that he is being singled out without due process. HARRIS claims that CDC procedures entitle him to receive written notice of any policy changes three months in advance. In response to the Appeal answers identifying him as a persistent and continuing sex offender within the institution, HARRIS claims that he is not guilty of those charges, and that these actions presume his guilt in advance of his Disciplinary Hearing. HARRIS claims he has a right to his privacy, and this policy violates his right to privacy because he is being penalized when staff members violate his privacy. HARRIS claims that standing in his cell nude does not qualify as a sexual offense, "Because I'm not doing anything and its not illegal because its not in a public place, its inside a place that I reside, for example, I may sleep nude."

## DETERMINATION OF ISSUE

The First Level Response remains an adequate, appropriate response to the claims of this inmate. This inmate has been associated with multiple indecent exposure offenses. In order to prevent any continuation of these offenses, a lexan covering has been added to his cell front that screens the inmate from the view of staff members. This lexan covering includes a window at eye level that does allow the inmate to see out of his cell. The lexan covering is designed to allow light into the cell. Whether or not the inmate feels that he has been punished by these measures, this is intended as a security precaution. It is designed to prevent future misconduct. It is designed to stop the inmate from continuing his offensive conduct toward staff members. If the inmate finds these precautions uncomfortable, this is unfortunate. However, these precautions will remain in place so long as they remain necessary to stop this inmate from continuing his offensive conduct.

Supplement Page 2
HARRIS, H-63617
Appeal # PBSP-C-03-03107

In this Appeal, HARRIS argues that he has a right to privacy and staff members have violated his privacy.

This statement represents a serious misunderstanding by this inmate. The courts, including the United States Supreme Court, have ruled on this issue any number of times. The message is always the same. No inmate has any right to privacy at any time. All actions of any inmate are public actions. This is because penological interest demands keeping the inmate under constant observation at all times. While the inmate may live in that prison cell, it is not his home, and it does not give him the privileges of his home. It is a prison cell. It is subject to constant public inspection at any and all times. It is a public space and HARRIS must behave accordingly.

HARRIS has no more right to stand naked in his prison cell than he has a right to stand naked in the middle of a supermarket. Both are public places. An inmate does not have the right to sleep in the nude. The inmate must keep himself covered at all times and under all circumstances. If the inmate does not meet this obligation, the inmate can and will be charged with the sex offense of *Indecent Exposure*. The fact that this inmate does not understand that this conduct cannot and will not be tolerated at any time is evidence in support of the continuing need for this security precaution. APPEAL DENIED.

MODIFICATION ORDER

No modification of this decision or action taken is required.

*R. Kirkland*
4 JOE MCGRATH
Warden
Pelican Bay State Prison

RJC 2-4-04-#38

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: JUN 4 2004

In re: Harris, H-63617
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0309554        Local Log No.: PBSP 03-03107

This matter was reviewed on behalf of the Director of the California Department of Corrections (CDC) by Appeals Examiner R. Floto. All submitted documentation and supporting arguments of the parties have been considered.

**I  APPELLANT'S ARGUMENT:** It is the appellant's position that the institution is discriminatory because a Lexan cell cover has been placed in front of his cell. He alleges that the institution is in violation of the regulations in doing so. He requests that that the Lexan cell cover front be removed from his cell.

**II  SECOND LEVEL'S ARGUMENT:** The reviewer found that the institution is in compliance with the regulations and State law. The appellant has a history of disciplinary infractions which require that the Lexan cover be placed in front of his cell due to safety and security concerns.

**III  DIRECTOR'S LEVEL DECISION:** Appeal is denied.

  **A. FINDINGS:** The Second Level response is appropriate and the decision is based upon a reasonable penological interest. It represents CDC's position. The Second Level of Review response is comprehensive. The appellant has not provided a compelling argument to warrant modification of the decision reached by the institution. The appellant has demonstrated that he is a threat to safety and security. Safety and security are paramount in the placement of inmates. The Lexan cover has been placed in front of his cell to curtail the appellant's ability to commit further disciplinary infractions.

  **B. BASIS FOR THE DECISION:**
  California Code of Regulations, Title 15, Section: 3270, 3272, 3377.1

  **C. ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDC.

*[signature]*

N. GRANNIS, Chief
Inmate Appeals Branch

cc:   Warden, PBSP
      Appeals Coordinator, PBSP

Earnest S. Harris H-63617
Pelican Bay Prison
P.O. Box 7500 C-7-121
Crescent City, Ca. 95531

PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532



MAILED FROM ZIPCODE 9
$00.34
DEC 10

"Confidential Mail" 9410 0235 3661 C004

United States Northern District Court
450 Golden Gate Avenue
San Francisco, Ca. 94102



USA 41