IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNEST S. HARRIS,<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT A. HOREL, et al.,<br><br>    Defendants. | No. C 06-7761 SBA (PR)<br><br>**ORDER GRANTING PLAINTIFF LEAVE TO FILE MOTION FOR RECONSIDERATION AND DENYING HIS MOTION FOR DISCOVERY**<br><br>(Docket nos. 32, 33) |

Plaintiff Ernest S. Harris, a state prisoner incarcerated at Pelican Bay State Prison (PBSP) filed this pro se civil rights action against two PBSP prison officials under 42 U.S.C. § 1983, alleging: (1) the policies implemented by Defendant PBSP Warden Robert Horel in response to incidents of indecent exposure by inmates violate the Eighth Amendment; and (2) Defendant PBSP Correctional Officer U. J. Cooper retaliated against Plaintiff for filing administrative grievances, in violation of the First Amendment. In an Order dated August 7, 2008, the Court granted in part and denied in part Defendants' motion to dismiss Plaintiff's complaint for failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).[1] The motion to dismiss was granted as to Plaintiff's First Amendment retaliation claims and denied as to his Eighth Amendment claim.

Plaintiff has filed a document entitled "Motion for Reconsideration" (docket no. 32), which the Court will construe as a motion for leave to file a motion for reconsideration pursuant to Local Rule 7-9(a). See Civil L.R. 7-9(a). Specifically, Plaintiff asks the Court to reconsider its dismissal of his retaliation claims against Defendant Cooper.

Also before the Court is Plaintiff's motion for discovery (docket no. 33).

For reasons outlined below, the Court GRANTS Plaintiff leave to file a motion for reconsideration and DENIES his motion for discovery.

---

[1] The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

## BACKGROUND

In its August 7, 2008 Order, the Court summarized the background of this case:

> Plaintiff alleges the Indecent Exposure Pilot Program (IEPP) implemented at PBSP by the California Department of Corrections and Rehabilitation (CDCR) violates his Eighth Amendment right to be free from cruel and unusual punishment. (Compl. at 1.) The IEPP institutes disciplinary actions in response to an incident of indecent exposure by an inmate. (Defs.' Mot. to Dismiss at 5.) The disciplinary responses include a range of punishment, including: placing an inmate in the Security Housing Unit (SHU); loss of property; appliance restrictions; and visiting restrictions. (Id.) The IEPP also institutes certain security precautions to prevent incidents of indecent exposure by inmates. (Id.) One such precaution is the placement of a "bright yellow placard or Lexan cell covering" on the front of an inmate's cell in order to alert prison staff to that inmate's "propensity to commit acts of indecent exposure or sexual disorderly conduct." (Id.) Another precaution is the placement of an inmate into an "exposure control jumpsuit," preventing that inmate from indecently exposing himself to others. (Id.) This suit is not used when an inmate with a propensity to commit such acts is inside of his cell. (Id.)
>
> The record reflects Plaintiff received eleven disciplinary reports between May 5, 1999 and February 24, 2006. (Barlow Decl., Exs. A-M.) Eight of these involved incidents of indecent exposure. (Id.) Plaintiff filed twelve inmate grievances between November, 2003 and December, 2006. (Defs.' Mot. to Dismiss at 13.) Eight of these grievances can be construed as complaints against the implementation of the IEPP's security measures. Plaintiff claims many of the punishments and restrictions imposed upon him pursuant to the IEPP are cruel and unusual and violate the Eighth Amendment. (Compl. at 3.)
>
> The four remaining grievances set out complaints of retaliation by Defendant Cooper. Plaintiff claims she retaliated against him for his filing of administrative grievances against her by falsifying a police report alleging Plaintiff had committed a battery upon her. (Id. at 9.)

(Aug. 7, 2008 Order at 2.)

## DISCUSSION

### I. Motion for Leave to File a Motion for Reconsideration

In the Northern District of California, Local Rule 7-9 allows for the filing of motions for reconsideration only with respect to interlocutory orders made in a case prior to the entry of final judgment. Civil L.R. 7-9(a). No pre-judgment motion for reconsideration under Local Rule 7-9 may be brought without leave of court. Id. The moving party must specifically show: (1) that at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the court before entry of the interlocutory order for which the reconsideration is sought, and that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or (2) the emergence of new material facts or

2

a change of law occurring after the time of such order; or (3) a manifest failure by the court to consider material facts which were presented to the court before such interlocutory order.  Civil L.R. 7-9(b).  Unless otherwise ordered by the court, no response need be filed to a motion under the Local Rule.  Civil L.R. 7-9(c).

Here, prior to ruling on Defendants' motion to dismiss, the Court considered Plaintiff's four 602 inmate appeal forms alleging retaliation by Defendant Cooper.  The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  It also provides them the right to file appeals alleging misconduct by correctional officers and officials.  Id. § 3084.1(e).  In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal:  (1) informal resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the CDCR.  Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a).  See id. at 1237-38.  Because none of Plaintiff's 602 appeal forms had proceeded through the Director's level of review, the Court determined that they were unexhausted.  See id.  The Court stated:

> Plaintiff filed a 602 appeal form (PBSP-04-01702) dated June 15, 2004 regarding complaints of Defendant Cooper looking into Plaintiff's cell despite the presence of the yellow Lexan cover. (Wilber Decl., Ex. C at 1.)  The appeal was canceled because Plaintiff refused to be interviewed. (Defs.' Mot. to Dismiss at 9.) Section 3084.4(d) of Title 15 of the California Code of Regulations states that "[a]n appellant's refusal to be interviewed or cooperate with the reviewer shall result in cancellation of the appeal." Cal. Code Regs. tit. 15, § 3084.4(d). As such, appeal PBSP-04-01702 is unexhausted.
>
> Plaintiff filed two additional 602 forms (PBSP-04-02473 and PBSP-06-01497) alleging retaliation by Defendant Cooper. (Wilber Decl., Exs. D, K.)  These appeals were also canceled because Plaintiff refused to be interviewed; therefore, appeal PBSP-04-02473 and appeal PBSP-06-01497 are unexhausted. (Defs.' Mot. to Dismiss at 9-11.)
>
> Plaintiff filed another 602 form (PBSP-06-00729) dated February 26, 2006 alleging further retaliation by Defendant Cooper against Plaintiff. (Wilber Decl., Ex. I at 1.)  Plaintiff did not submit this appeal through the Director's level, and it has therefore not been properly exhausted. (Defs.' Mot. to Dismiss at 10.)

(Aug. 7, 2008 Order at 8.)  The Court noted that Plaintiff claimed to have exhausted his administrative remedies regarding his retaliation claims against Defendant Cooper by filing a "citizen's complaint," rather than by going through the prison grievance process.  (Id. at 8-9 (citing Pl.'s Mot. Summ. J. at 1).)  Plaintiff argued that because the denial of a citizen's complaint under § 3391 of Title 15 of the California Code of Regulations cannot be appealed, the complaints relating to his retaliation claims against Defendant Cooper were exhausted.  (Id. at 9.)  The Court found Plaintiff's argument unavailing because he should have exhausted his claims through the prison grievance process instead of filing a citizen's complaint under § 3391.  (Id.)  The Court stressed that § 3391 applies only to non-inmates:

> Section 3391 states in relevant part:
>
> > (b) An allegation by a non-inmate of misconduct by a departmental peace officer as defined in section 3291(b), is a citizen's complaint pursuant to Penal Code section 832.5.  Citizen's complaints alleging misconduct of a departmental peace officer shall be filed within twelve months of the alleged misconduct.
> >
> > (c) Persons other than an inmate, parolee or staff who allege misconduct of a departmental peace officer shall submit a written complaint to the institution head or parole administrator of the area in which the peace officer is employed.
>
> Cal. Code Regs. tit. 15, § 3391(b)-(c) (emphasis added).

(Aug. 7, 2008 Order at 9.)  Furthermore, the Court stated that "inmates in the State of California must comply with the appeals process described in § 3084, et seq., of Title 15 of the California Code of Regulations."  (Id. (citing Woodford v. Ngo, 548 U.S. 81, 90-91, (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules.")).)  In granting Defendants' motion to dismiss as to Plaintiff's retaliation claims, the Court concluded:  "Plaintiff's retaliation claims are unexhausted because the 602 appeal forms dealing with retaliation by Defendant Cooper were not submitted to the Director's level."  (Id.)

In the instant motion, Plaintiff contends that the Court was mistaken in dismissing his retaliation claims as unexhausted because he alleges that he was successful in his efforts to exhaust these claims by filing a "staff complaint."  (Mot. for Lv. to File at 3.)  He states:

> Obviously, the prison has two forms of reporting misconduct by its employee's [sic] a 602 or a staff complaint.  The prison has a[n] appeal (602)

4

> screening process under the title 15 section 3084. And [they] never screen[ed] one of my staff complaint[s] by stating that I could not file a staff complaint. Not one of my staff complaints was denied for using a[n] improper form, no one advised me that I could not file a staff complaint and actual[ly] mislead [sic] me to believe that I could file a staff complaint by conducting these hearings under a "false premise" that they were legitimate when these hearings were actually a sham and lie. If prison officials stated I could not file a staff complaint only a 602, "I would have file[d] a 602." But that dose [sic] not excuse the fact that the prison officials conducted the hearings and made their rulen [sic], so under the fact that the prison was properly notified and had a chance to respond to the misconduct of C/O Cooper and the prison chosen [sic] not to do anything about the many staff complaint[s] filed by [Plaintiff] against C/O Cooper. I exhaust[ed] my administrative remedies.

(Id. at 2-3.) Plaintiff seems to be demonstrating a manifest failure by the Court to consider material facts presented to it before the dismissal of the retaliation claims as unexhausted. See Civil L.R. 7-9(b). Specifically, he raises issues with respect to citizen's complaints or, as he refers to them in his motion, "staff complaints." The Court notes that the use of staff complaints were addressed in the Ninth Circuit's opinion in Brown v. Valoff, 422 F.3d 926 (9th Cir. 2005). In Brown, the Ninth Circuit addressed a case where a California prisoner had filed an appeal using the internal grievance procedures of the CDCR, complaining that a prison guard had used excessive force against him. Id. at 930. The appeal was denied at the first level of review. Id. At the second level of review, a decision was issued characterizing the prisoner's appeal as a "staff complaint," and informing the prisoner that an investigation would be conducted, that the administration would decide on the appropriate action to be taken if necessary, and that the prisoner would not be apprised of any disciplinary action taken as a result of his appeal. Id. at 937. The second-level decision told the prisoner that his appeal had been partially granted because the matter would be investigated. Id. The decision did not tell the prisoner that any further review was available. Id. In deciding whether, under such circumstances, the prisoner was required to proceed beyond the second level of review in order to exhaust his administrative remedies, the Ninth Circuit found that "the reasonable import of [the second-level decision] is that no further relief will be available through the appeals process, but the confidential staff complaint investigation would go forward and could result in some administrative action based on [the prisoner's] complaint." Id. at 937-38. This interpretation of the second-level decision was confirmed by the CDCR's policies and manuals, which required that staff misconduct grievances be investigated only through the specialized staff complaint

1  process, thereby negating any possibility of a parallel investigation through the usual appeals
2  process. Id. at 938. Accordingly, the Ninth Circuit concluded, no further relief is available to a
3  prisoner through the CDCR's appeals process once his appeal is partially granted at the second level
4  of review and a confidential investigation into a staff complaint is launched. Id. at 938-39. Under
5  such circumstances, the prisoner has exhausted his available administrative remedies when the
6  second-level decision is issued, and has no obligation to pursue a Director's level appeal before
7  proceeding to federal court. Id. at 939.

8  Here, Plaintiff claims that some of his allegations of staff misconduct relating to Defendant
9  Cooper's actions were referred for investigations based on staff complaints he had filed. (Mot. for
10 Lv. to File at 3.) At this time, such a claim does not establish exhaustion for two reasons. First,
11 because Plaintiff did not submit the underlying staff complaints, it is not clear whether the staff
12 misconduct being investigated pertained to Defendant Cooper's retaliatory conduct, which is the
13 basis for his retaliation claims. Second, the mere fact that investigations had been undertaken does
14 not necessarily mean that there were no further administrative remedies available. The obligation to
15 exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner
16 need not further pursue the grievance. See Brown, 422 F.3d at 934-35. As mentioned above, a
17 prisoner need not exhaust further levels of review once he has either received all the remedies that
18 are "available" at an intermediate level of review, or has been reliably informed by an administrator
19 that no more remedies are available. Id. at 935.

20 Accordingly, in light of the Ninth Circuit's ruling in Brown and Plaintiff's allegations
21 regarding the staff complaints he has filed, the Court GRANTS Plaintiff's motion for leave to file a
22 motion for reconsideration (docket no. 32). In his motion for reconsideration, Plaintiff is directed to
23 specifically address whether staff complaints were filed in the four 602 inmate appeal forms relating
24 to his retaliation claims against Defendant Cooper, including the following appeal numbers: PBSP-
25 04-01702; PBSP-04-02473; PBSP-06-01497; and PBSP-06-00729. The Court notes that in the
26 present motion Plaintiff states, "It does not matter if the staff complaints were granted, partially
27 granted or denied, the Senior Lieutenant ruled on its merit, therefore the prison was notified, and I

6

1  can not [sic] appeal a staff complaint." (Mot. for Lv. to File at 3.) However, Plaintiff must now
2  clearly state the result of each staff complaint, and he must explain whether he exhausted all
3  available remedies as to the claims in each staff complaint. Plaintiff must also address whether he
4  exhausted all available remedies as to the claims in the 602 appeals and/or staff complaints that
5  were "canceled" because he refused to be interviewed. Once Plaintiff files his motion for
6  reconsideration, the Court directs Defendants to file a response addressing the issues above and any
7  other issues relating to the application of Brown. The parties shall abide by the briefing schedule
8  outlined below.

## II. Motion for Discovery

On September 8, 2008, Plaintiff filed a motion for discovery. Plaintiff states that he requests "transcripts, documents, and evaluations that should be in the possession of the Defendant (Warden Robert A. Horel) which is needed to further prove [the] truth in [Plaintiff's] litigation against Defendant." (Mot. for Disc. at 1.)

Only when the parties have a discovery dispute that they cannot resolve among themselves should they ask the Court to intervene in the discovery process. The Court does not have time or resources to oversee all discovery and therefore requires that the parties present to it only their very specific disagreements. To promote this goal of addressing only very specific disagreements, federal and local discovery rules require the parties to meet and confer to try to resolve their disagreements before seeking court intervention. See Fed. R. Civ. P. 37(a)(2)(B); Civil L.R. 37-1. Because Plaintiff is incarcerated he is not required to meet and confer with Defendants in person. Rather, if his discovery requests are denied, and he intends to seek a motion to compel he need only send a letter to Defendants to that effect, offering them one last opportunity to provide him the sought-after information.

Here, Plaintiff has failed to show that he provided Defendants with one last opportunity to address each request upon which he now asks the Court to rule. Moreover, it may be that Plaintiff has already obtained some of the sought-after discovery because Defendant Horel has since filed a motion for summary judgment and accompanying exhibits, which should have also been served to Plaintiff. Accordingly, Plaintiff's motion for discovery (docket no. 33) is DENIED as premature.

7

The parties are directed to abide by the discovery cut-off date that the Court has set below.

## CONCLUSION

For the foregoing reasons,

1. Plaintiff's motion for leave to file a motion for reconsideration (docket no. 32) is GRANTED. The Court orders as follows:

    a. No later than **forty-five (45) days** of the date of this Order, Plaintiff's motion for reconsideration, addressing the issues outlined above, shall be filed with the Court and served on Defendants' counsel.

    b. Defendants' response to Plaintiff's motion for reconsideration shall be filed with the Court and served on Plaintiff no later than **thirty (30) days** after the date that motion is filed.

    c. If Plaintiff wishes to file a reply brief, he may do so no later than **fifteen (15) days** after the date Defendants' response is filed.

    d. The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the Court so orders at a later date.

2. Plaintiff's motion for discovery (docket no. 33) is DENIED as premature. In the interests of justice, the Court sets a discovery cut-off date of **forty-five (45) days** from the date of this Order. If Plaintiff attempts to meet and confer with Defendants regarding requests for the production of documents and is not satisfied with the result he may file a renewed discovery motion. But in no event shall Plaintiff file such a motion until after he has reviewed Defendant Horel's dispositive motion and the accompanying exhibits. The Court will address Defendant Horel's motion for summary judgment in a separate written Order.

3. This Order terminates Docket nos. 32 and 33.

IT IS SO ORDERED.

DATED: March 31, 2009

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

HARRIS et al,

        Plaintiff,

v.

HOREL et al,

        Defendant.

Case Number: CV06-07761 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 2, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Earnest S. Harris
Pelican Bay State Prison
Prisoner Id H-63617
P.O. Box 7500
Crescent City, CA 95531

Dated: April 2, 2009

        Richard W. Wieking, Clerk
        By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\CR.06\Harris7761.Lv2File-RECONS.frm